TOWN OF LUMBERTON v. GURNEY P. HOOD, COMMISSIONER OF BANKS, PLANTERS BANK AND TRUST COMPANY, AND R. C. COPPEDGE, LIQUIDATING AGENT.

(Filed 8 February, 1933.)

1. **Banks and Banking H d—Right of bank to offset depositor's claim against depositor's debt to bank.**

Upon the insolvency of a bank it has the right to offset an amount due a depositor against the depositor's debt to the bank if the depositor's debt has matured, or, even though the debt has not matured, if the depositor is insolvent.

2. **Same—Bank held not entitled to offset municipal bonds owned by it against the municipality's deposit in the bank.**

A bank executed bonds to secure deposits by an incorporated town. The bank refused to renew the bonds at their expiration, but entered into a written agreement with the town whereby the town was "assigned" certain of its municipal bonds owned by the bank to "protect it against loss on account of deposits." The bank became insolvent. The municipal bonds bore maturity dates of 1935, 1941 and 1942, and at the time of the bank's insolvency were selling below par, although the town was solvent: *Held*, the bank was not entitled to offset the town's deposit against the municipal bonds owned by it, the town being solvent and the bonds not having matured.

3. **Indemnity B a—**

An action on an "indemnity" contract in its technical sense could not be instituted at law until damages had been suffered, but a suit in equity could be maintained to enforce rights arising therefrom.

4. **Actions B a—**

Both legal and equitable rights and remedies may be maintained in one civil action. Constitution, Art. IV, sec. 1, C. S., 399.

5. **Contracts B a—Intention of parties to contract will be given effect.**

In interpreting a contract the intention of the parties as gathered from the entire instrument will be given effect, but such intention may be sought from circumstances surrounding its execution, including the subject-matter, the relation of the parties, and the object of the agreement.

6. **Banks and Banking H d—Town held entitled to immediate sale of its bonds pledged by bank to secure deposit.**

A bank executed bonds to secure deposits by an incorporated town. The bank refused to renew the bonds at their expiration, but entered into a written agreement with the town whereby the town was "assigned" certain of its municipal bonds owned by the bank to "protect it against loss on account of deposits." The bank became insolvent, and the town demanded of the liquidating agent the amount of its deposit, and sought to sell the bonds so assigned: *Held*, the purpose of the agreement was to prevent damage to the town by reason of the loss of the deposit or the tying up of its funds, and the town is entitled to have the bonds sold

and applied to the payment of its deposit without having to wait until the amount of loss should be determined in the process of liquidation of the bank.

APPEAL by defendants from *Small, J.,* at Chambers, 19 September, 1932. From ROBESON.

The case was heard on an agreed statement of facts, the substance of which is as follows:

The plaintiff is a municipal corporation; the Planters Bank and Trust Company was engaged in the business of banking at Lumberton; the defendant Hood is the Commissioner of Banks; and R. C. Coppedge is the liquidating agent of said bank. The plaintiff required the defendant bank as a depository of its funds to execute a surety bond to indemnify it against loss. The bank gave the bond, and it remained in force from 1925 until 1 July, 1931, when the bank refused to renew the bond. Thereupon the plaintiff and the defendant bank entered into the following contract:

"Lumberton, N. C., 1 July, 1931.

Planters Bank and Trust Company.—City.

Gentlemen:

This is to certify that the town of Lumberton holds $8,000 of town of Lumberton municipal bonds assigned by you to it in lieu of a surety bond in a like amount to protect the town of Lumberton from any loss on account of deposits made by the said town with you. The town of Lumberton agrees to be responsible for the safe-keeping of said bonds until the conditions under which the assignment has been made are fully discharged and at that time the same will be redelivered to the Planters Bank and Trust Company. As an evidence of this mutual agreement between the town of Lumberton and the Planters Bank and Trust Company, this letter is approved by the signature of the Planters Bank and Trust Company.

This 1 July, 1931.                         Town of Lumberton.
                                  By E. M. Johnson, Mayor.

Attest: R. W. Wishart, city clerk.    Approved: Planters Bank and Trust Company, by K. M. Barnes, president."

The execution of this contract was approved by the proper authorities representing the plaintiff and the bank. The bank then turned over to the plaintiff $8,000 in the bonds of the town of Lumberton which were the property of the bank. These bonds were as follows: Funding Bonds, Nos. 24, 25, and 26 in the sum of $1,000 each, due 1 April, 1935, bearing interest at 6%; Street Improvement Bond, No. 76, for $1,000 due 1 April, 1941, at 6% interest; Street Improvement Bonds, Nos. 77, 78, 79 and 80, each in the sum of $1,000 due 1 April, 1942, bearing interest at

LUMBERTON *v.* HOOD, COMMISSIONER.

6%. These bonds are now held by the plaintiff. On 19 December, 1931, the bank closed its doors and the Commissioner of Banks took charge of the affairs and placed it under the management of the liquidating agent. On the day the bank was closed the plaintiff had on deposit the sum of $6,831.66, and since that time has demanded of the bank the payment of the said amount, and has notified the Commissioner and liquidating agent that it would advertise and sell the bonds referred to unless the amount of deposit was paid. The defendants thereupon offered to allow the plaintiff to retain as its own property free from any claim or demand of the defendant bank enough of the municipal bonds to aggregate, including interest, the sum of $6,831.66, the remainder of the said $8,000 in bonds to be returned to the defendants. The defendants made an alternative proposition to pay to the plaintiff from time to time in the orderly liquidation of the bank sums of money aggregating the amount of deposit. The bank is yet in process of liquidation and it cannot be determined what dividend it will be able to pay, or whether it will be able to satisfy in full the demands of its creditors. The bank has no funds with which to purchase the bonds. The bonds are not listed upon any stock exchange and while the town of Lumberton is financially solvent, still on account of the long existing financial depression and the time of almost world-wide economic distress, said bonds would not bring, if sold at this time, more than seventy per cent of their par or face value. Conditions are worse now than they were when said bank closed its doors, as said bonds could have been sold then for 85 per cent of their face value, whereas now they cannot be sold for more than 70 per cent thereof.

Upon the foregoing facts, the court rendered the following judgment:

First: That the plaintiff have and recover of the defendant, Planters Bank and Trust Company, the sum of $6,831.66, with interest thereon from 21 December, 1931. It is further considered and adjudged that in default in the payment of said sum with interest and costs into the office of the clerk of this court within 90 days from 1 October, 1932, said bonds be sold to satisfy the amount for which judgment is now rendered in favor of the plaintiff. And R. W. Wishart is hereby appointed as commissioner to make sale of said bonds and he will sell same at public auction to the highest bidder for cash at the courthouse door at Lumberton, N. C., after first advertising the time and place of sale for 30 days at the courthouse door and four other public places once a week for four weeks, and also by publication once a week for four consecutive weeks in some newspaper published in said county and he will file his report of sale in the office of the clerk within ten days thereafter.

It is further considered and adjudged that the plaintiff recover of the defendant the costs of this action as taxed by the clerk.

The defendants excepted and appealed upon assigned error.

*T. A. McNeill and Varser, Lawrence, McIntyre & Henry for appellants.*

*John G. Proctor and Johnson & Floyd for appellee.*

ADAMS, J. The Planters Bank and Trust Company, a corporation engaged in the business of banking, held funding and street improvement bonds issued by the plaintiff in the sum of $8,000, payable on 1 April, 1935, 1941, and 1942. On 19 December, 1931, it closed its doors and the Commissioner of Banks took charge of its assets. At that time the plaintiff had on deposit in the bank the sum of $6,831.66, which was subject to check. For a number of years prior thereto the plaintiff had deposited funds in the bank, and in 1925 had passed a resolution requiring the bank to execute a bond payable to the town to protect it against the loss of its deposits. Upon the refusal of the bank to renew the bond, the parties entered into the written contract set out in the statement of facts. The plaintiff demanded payment of its deposit and, upon the refusal of the Commissioner of Banks to make payment, brought suit to recover the amount of deposit and to get an order for a sale of the bonds it held as security. The defendants resisted judgment on the ground that the bank owned the bonds and had a right to offset against the plaintiff's demand the amount due the plaintiff on its deposit. The plaintiff denied the asserted right of set-off or counterclaim.

There is diversity of opinion and conflict of authority concerning the effect on the right of set-off of the immaturity of a claim at the time insolvency proceedings are begun. A discussion of the question with annotations appears in the following cases: *Gerseta Corp. v. Equitable Trust Company,* 43 A. L. R., 320; *Prudential Realty Co. v. Allen,* 25 *ibid.,* 935; *Steelman v. Atchley,* 32 L. R. A. (N. S.), 1060; *Richardson v. Anderson,* 25 L. R. A. (N. S.), 393; *Nashville Trust Co. v. Fourth National Bank,* 15 L. R. A., 710; *Fidelity Trust and Safety Vault Co. v. Merchants National Bank,* 9 L. R. A., 108.

The decisions of this Court are in accord with those which hold that a bank may offset the amount it is due for deposits against the indebtedness of a depositor if the depositor's indebtedness to the bank has matured or if the depositor is insolvent. The principle is stated as follows in *Hodgin v. Bank,* 124 N. C., 540: "A bank has the right to apply the debt due by it for deposits to any indebtedness by the depositor, in the same right, to the bank, provided such indebtedness to the bank has matured. *Bank v. Hill,* 76 Ind., 223; *Knapp v. Cowell,* 77 Iowa, 528; *Coats v. Preston,* 105 Ill., 470; *Bank v. Bowen,* 21 Kansas, 354; *Clark v. Bank,* 160 Mass., 26; *Bank v. Armstrong,* 15 N. C., 519; *Muench v. Bank,* 11 Mo. App., 144; Morse on Banks, sec. 324; *Bank v. Hughes,* 17 Wend., 94; *Eyrich v. Bank,* 67 Miss., 60. Even if the in-

debtedness to the bank has not matured, if the depositor becomes insolvent, the bank by virtue of the right of equitable set-off may apply the deposits with it of such debtor to his indebtedness. *Dammon v. Bank,* 50 Mass., 194; *Flour Co. v. Bank,* 90 Ky., 225; *Trust Co. v. Bank,* 91 Tenn., 336; *Seed Co. v. Talmage,* 96 Ga., 254; Waterman on Set-off, 432."

The reversal of another proposition laid down in that case does not affect this statement of the law. *Hodgin v. Bank,* 125 N. C., 503. Indeed, the principle is approved in *Moore v. Bank,* 173 N. C., 182; *Trust Co. v. Trust Co.,* 188 N. C., 766; *Graham v. Warehouse,* 189 N. C., 533; *Trust Co. v. Spencer,* 193 N. C., 745; *Coburn v. Carstarphen,* 194 N. C., 368. It is needless to review the several decisions in which the question is discussed. We do not regard *Davis v. Mfg. Co.,* 114 N. C., 331, which deals with the cross-demands of insolvent corporations, as necessarily in conflict with these cases.

In their briefs the defendants seem to concede the general principle as declared in *Hodgin v. Bank, supra;* but they say that since the bonds at this time will not sell for more than 70 per cent of their par value, the plaintiff is for practical purposes insolvent. We cannot agree with the defendants. It is admitted that "the town of Lumberton is financially solvent." The market value of the best of securities fluctuates. Today it may be low and tomorrow it may be high; it is not always determined by the question of the debtor's financial standing. Our conclusion, therefore, is this: Since the town of Lumberton is solvent and the bonds are not due, the right of set-off is precluded.

The defendants raise another question. The bank assigned the bonds to the plaintiff "to protect the town of Lumberton from any loss on account of deposits made by the town with the bank." The defendants say that even if the doctrine of offset or counterclaim is not applicable here the plaintiff cannot sell the bonds until the liquidation of the bank is completed and the percentage of its delinquency is determined. This position can be sustained, if at all, only upon the theory that the contract between the parties is strictly a contract of indemnity.

Technically the word "indemnify" is used in the sense of giving security or in the sense of relieving a party from liability for accrued damage. In a broad sense indemnity signifies that which is given to a person to save him from suffering damage. 31 C. J., 419. Under the former practice if a collateral obligation was in strickness an indemnity an action at law could not ordinarily be maintained until some actual loss or damage had been suffered, but a suit could be prosecuted in a court of equity if it was necessary for the prevention of wrongs or the enforcement of rights growing out of the obligation. *Hilliard v. New-*

*berry,* 153 N. C., 104; *Burroughs v. McNeill,* 22 N. C., 297. The distinction between actions at law and suits in equity has been abolished and under the prevailing system a civil action is a proceeding for the enforcement or protection of a right or the redress or prevention of a wrong. Constitution, Art. IV, sec. 1; C. S., 399.

In the interpretation of contracts the intention of the parties as embodied in the entire instrument is the end to be attained, but the intention may be sought from the circumstances surrounding its execution, including the subject-matter, the relation of the parties, and the object of the agreement. *Kirkman v. Hodgin,* 151 N. C., 588; *Hornthal v. Howcott,* 154 N. C., 228; *Wiley v. Lumber Co.,* 156 N. C., 210; *Faust v. Rohr,* 166 N. C., 187; *Bank v. Redwine,* 171 N. C., 559; *King v. Davis,* 190 N. C., 737.

The manifest purpose of the contract in question was to prevent damage to the plaintiff by the bank's holding the funds subject to use on demand of the depositor. The plaintiff is not an individual but a municipal corporation charged with the performance of duties necessary to its government; for its functions are governmental as well as municipal. For purposes of local administration it may be deemed an agency of the State. In the conduct of its business depositing and withdrawing money may usually be regarded as a daily incident. Security for prompt payment may be demanded. In this case the bonds were accepted by the plaintiff in lieu of a "security bond." The obvious purpose would be defeated if the funds were dissipated or "tied up" for the indefinite period required for the liquidation of the bank. We are, therefore, of opinion that the plaintiff is not required to await final settlement by the Commissioner of Banks but may proceed at once to sell the bonds held as collateral security. Judgment

Affirmed.