THE FIDELITY & CASUALTY COMPANY OF NEW YORK v. CHARLES W. ANGLE, INC., AND CHARLES W. ANGLE.

(Filed 29 February, 1956.)

**1. Indemnity § 1—**

　　Allegations to the effect that contract of indemnity was executed by the indemnitors and delivered to the indemnitee, and that the indemnitee was induced thereby to become surety for the principal indemnitor on numerous performance bonds, resulting in liability or loss to the indemnitee, are sufficient to state a cause of action on the indemnity agreement, notwith-

standing the indemnitee did not execute the agreement, the fact that the indemnitee accepted and acted upon the indemnity contract being sufficient to show the mutuality required by law.

**2. Indemnity § 2d—**

An indemnity agreement may contract against actual loss or liability, or both, and in this case the agreement indemnifying the surety on a contractor's performance bonds against all claims, demands, damages, etc., and obligating indemnitors to pay the indemnitee all amounts for which it should become liable by reason of the performance bonds, *is held* to warrant suit against the indemnitors for loss to indemnitee under the contractor's bonds prior to the determination of the amount of loss against the principal on the contractor's bonds.

APPEAL by plaintiff from *Crissman, J.,* at 24 October, 1955 Civil Term, of GUILFORD—Greensboro Division.

Civil action to recover on contract of indemnity dated 3 September, 1934, heard upon demurrer of individual defendant to complaint of plaintiff on the ground that the facts alleged are not sufficient to state a cause of action as hereinafter more fully stated,—the corporate defendant having answered.

The complaint alleges that plaintiff is a corporation organized and existing under the laws of New York, doing business in the State of North Carolina as authorized by law; that defendant Charles W. Angle, Inc., is a corporation organized and existing under the laws of the State of North Carolina; and that defendant Charles W. Angle is an individual and a resident of Greensboro, N. C.

The complaint further alleges (paragraph IV) that on or about 3 September, 1934, the defendants executed and delivered to the plaintiff a "contract of indemnity," a copy of which is thereto attached, marked Exhibit A, the contract being specifically pleaded and asked to be taken as a part of the complaint as fully as if same were set forth in its entirety.

Pertinent parts of Exhibit A are these: It is designated "CONTRACT OF INDEMNITY," and is between "Charles W. Angle, Inc. . . . called the principal, and . . . Charles W. Angle . . . called the INDEMNITOR, and THE FIDELITY & CASUALTY COMPANY OF NEW YORK . . . called the company."

And after reciting that "Whereas, at the special instance and request of the Principal and the Indemnitor, and on the security of this agreement, the Company is or is to become surety for the Principal on certain proposal, supply, contract, court, license, and other bonds," the contract declares that "therefore, in consideration of the premises and of the sum of one dollar in hand paid by the Company to the Principal and the Indemnitor, the receipt of which is hereby acknowledged, the

Principal and the Indemnitor hereby agree and bind themselves, their heirs, executors, administrators, successors and assigns as follows, among others:

"3.  That the Principal and the Indemnitor shall and will at all times indemnify and keep indemnified the Company from and against any and all claims, demands, losses, damages, costs, charges, counsel fees, expenses, suits, orders, judgments, and adjudications whatsoever, that the Company shall or may for any cause at any time sustain or incur by reason of or in consequence of the said bonds or any renewal thereof or any new bond issued in continuation thereof or as a substitute therefor; and the Principal and the Indemnitor further covenant and agree to place the Company in possession of funds whenever necessary for the Company's protection against such claims, demands, losses, damages, costs, charges, counsel fees, expenses, suits, orders, judgments, and adjudications whatsoever, and to pay to the Company, before the Company shall be compelled to pay the same, all damages, losses, costs, charges, counsel fees, and expenses for which the Company shall become liable by reason of or in consequence of the said bonds or any renewal thereof or any new bond issued in continuation thereof or as substitute therefor.

"4.  That immediately upon the Principal or the Indemnitor becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability with which the Company may be subsequently charged under the said bonds or any renewal thereof or any new bond issued in continuation thereof or as a substitute therefor, the Principal or the Indemnitor shall notify the Company thereof in writing." . . .

"16.  That in case any of the parties mentioned in this Agreement of Indemnity fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect, or invalidity shall not in any manner affect the validity of this Agreement of Indemnity, or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect, or invalidity had not existed."

Then follows signature to the agreement in this manner:

"IN WITNESS WHEREOF, the Principal and the Indemnitor have

hereunto set their hands and affixed their seals the day and year first above written.

CHARLES W. ANGLE, INC.
(Full name of Principal)
By: C. W. Angle, President
C. W. Angle
(Full name of Indemnitor)

"Signed, sealed and delivered in the presence of
E. Tilley, Secy.
Stamped:
(F & C Atlanta)
( Sep. 26 1934 )
(        Office        )"

The complaint further alleges in paragraph V that:

"The aforesaid contract of indemnity was executed and delivered by the defendants to the plaintiff to induce the plaintiff to become surety for the defendant Charles W. Angle, Inc., on certain bonds to be given by the defendant Charles W. Angle, Inc., in connection with carrying on its principal business of general building construction and contracting, and by the terms of said indemnity agreement the defendant Charles W. Angle represented to the plaintiff that he had a substantial, material and beneficial interest in obtaining the said bonds and the said Charles W. Angle and Charles W. Angle, Inc., agreed that if the plaintiff would execute said surety bonds the defendants would indemnify the plaintiff from and against any loss, damages and expense of whatsoever kind or nature which the plaintiff might sustain by reason of or in consequence of executing said bonds, and further agreed fully to protect and save said plaintiff harmless on account of the execution of said bonds, *all as is more fully set out in said indemnity agreement.*" (Emphasis by the Court.)

And the complaint further alleges:

"VII. Relying upon the said indemnity agreement, the plaintiff from time to time from September 3, 1934, to September 11, 1950, became surety for the defendant Charles W. Angle, Inc., on numerous bonds for the performance of contracts entered into by the said defendant Charles W. Angle, Inc. The defendant Charles W. Angle has at all times from September 3, 1934, to date been the chief executive officer and principal stockholder of the defendant Charles W. Angle, Inc. and executed the aforesaid bonds as an officer of the defendant corporation, knowing that the plaintiff was relying upon the said indemnity agreement."

Among the bonds on which plaintiff became surety are, as is alleged, in paragraph VIII, three separate bonds copies of which are attached to complaint as Exhibits B, C, and D effective in the year 1950, and signed in name of Charles W. Angle, Inc., by C. W. Angle, President, specifically described, in the penal sums of $218,936.00, $191,300.00, and $125,170.00,—the latter being in respect to heating plant at A. & T. College.

And the complaint further alleges among other things:

"IX. The defendant Charles W. Angle, Inc., was unable to perform any of the aforesaid three contracts, and about March 26, 1952, the plaintiff as surety on the aforesaid bonds was called upon to make payment of certain obligations of the defendant Charles W. Angle, Inc. under each of these three contracts and bonds."

"XII. Pursuant to its obligations under the aforesaid three bonds and pursuant to the agreement of March 26, 1952, the plaintiff, as surety on said bonds, over a period from April 22, 1952, to April 6, 1955, paid the sum of $77,020.75 on behalf of the defendant Charles W. Angle, Inc. In repayment of said sums paid by the plaintiff, the plaintiff received on March 18, 1954, from the defendant Charles W. Angle the sum of $45,914.37, said sum being received from the renting and sale of property pledged to secure and indemnify the plaintiff as provided for in the aforesaid agreement of March 26, 1952. On August 1, 1954, the plaintiff received the sum of $10,615.38, said sum being the final payment due to the defendant Charles W. Angle, Inc. on the contract for the construction of the central heating plant at A & T College in Greensboro, North Carolina. The balance due to the plaintiff from the defendants, after crediting these two payments, is $20,491.00 plus interest."

"XIV. The defendants are justly and truly indebted to the plaintiff in the sum of $20,491 plus interest . . . and demand has been made upon the defendants for payment of this sum, and the defendants have failed and neglected and still fail and neglect to pay said obligation."

And accordingly plaintiff prays judgment.

The defendant Charles W. Angle demurred to plaintiff's complaint as hereinabove stated for that it appears from the complaint of plaintiff that the facts therein alleged are not sufficient to constitute a cause of action against him for that:

"1. The alleged liability of this defendant to plaintiff is based on an alleged contract, which was specifically pleaded, attached to the complaint, marked Exhibit A, and made a part of said complaint; that the parties to said alleged contract were Chas. W. Angle, Inc., as one of the parties, Chas. W. Angle, as a second party, and The Fidelity & Casualty Company of New York, as a third party; that said alleged

contract was not executed by The Fidelity & Casualty Company of New York and for that reason did not become binding upon this defendant.

"2. The liability of this defendant to plaintiff, if any, is strictly that of an indemnitor and not a surety; that the amount of plaintiff's loss, if any, resulting from the matters and things complained of, has not been determined and will not be determined until after the termination of plaintiff's action against Chas. W. Angle, Inc.: therefore it appears from the complaint of plaintiff that a cause of action does not now lie against this defendant."

The cause coming on to be heard and being heard before the judge presiding at the 24 October, 1955 Civil Term of Superior Court of Guilford County, Greensboro Division, "and it appearing to the court that the demurrer of defendant Charles W. Angle was based on the ground that it appears upon the face of plaintiff's complaint that the indemnity contract sued on by plaintiff and referred to in paragraph four (4) of plaintiff's complaint was a nullity and also upon the ground that it appears upon the face of plaintiff's complaint that defendant Charles W. Angle is strictly an indemnitor and that plaintiff's cause of action, if any, against said defendant does not lie until plaintiff's loss as surety for Charles W. Angle, Inc., has been actually determined; and it appearing to the court that the demurrer of defendant Charles W. Angle is meritorious in all respects and should, therefore, be sustained," the court sustained the demurrer in all respects, and ordered the action of plaintiff as to said defendant dismissed.

To the signing, rendition and entry of the judgment sustaining the demurrer as aforesaid, plaintiff excepted and appeals to Supreme Court and assigns error. ·

*Smith, Moore, Smith & Pope for plaintiff, appellant.*
*Andrew Joyner, Jr., for defendant, appellee.*

WINBORNE, J.    Admitting the truth of the allegations of fact set out in the complaint in present action, as is done when testing the sufficiency of a pleading challenged by demurrer, the Court is unable to say that in no view of the case the complaint fails to state a cause of action.   Hence, error is made to appear in the judgment from which appeal is taken.

As to the first ground on which demurrer is based, that is, that the contract here in suit, not having been executed by plaintiff, did not become binding upon the individual defendant, the demurrant:

From the pleadings and briefs filed in this Court, it seems to be conceded that the contract here involved is an indemnity agreement.   Such

an agreement usually has only two parties to it, the indemnitor and the indemnitee. *Casualty Co. v. Waller,* 233 N.C. 536, 64 S.E. 2d 826. And ordinarily it is not necessary for the person indemnified to sign the agreement. 42 C.J.S. 567, Indemnity 4 (a) "Signing." *Gushard v. Moyer,* 164 N.E. 281, 92 Ind. App. 519; *Berlinger v. Bernstein,* 156 A. 548, 102 Pa. Super. 225.

Indeed, the text writers, interpreting decided cases, say that the rules laid down relating to signing of contracts generally apply to a contract of indemnity; that signature is not always essential to the binding force of an agreement; that the object of a signature is to show mutuality or assent, which may be shown in other ways; and "that in absence of a statute," it need not be signed, "provided it is accepted and acted on, or is delivered and acted on." 42 C.J.S. 568, and 17 C.J.S., p. 410—Contracts 62. See also *Coppersmith v. Ins. Co.,* 222 N.C. 14, 21 S.E. 2d 838.

And, in this connection, it is alleged in the complaint in the present case that the defendants executed and delivered to plaintiff the contract of indemnity to induce plaintiff to become surety for the defendant Charles W. Angle, Inc., on certain performance bonds, and relying upon the indemnity agreement, plaintiff thereafter from time to time over a period of nearly sixteen years became such surety for defendant Charles W. Angle, Inc., on numerous such bonds, including the three specifically described.

These allegations would seem to be sufficient to admit of an inference that plaintiff, as indemnitee, accepted and acted on the indemnity contract on which this action is based.

Now as to the second ground on which the demurrer is based, that is, that the liability of demurrant to plaintiff, if any, is strictly that of indemnitor, and the amount of loss, if any, resulting from the matters and things of which complaint is made, has not been determined, and, hence, a cause of action does not now lie against him:

In this connection in 27 Am. Jur., p. 469, the author declares: "The necessity for actual damage to the indemnitee as a condition to the liability of the indemnitor depends upon the terms or conditions contained in the contract, actual damage being required in the case of strict contract of indemnity against loss or damage, and none in the case of an indemnity against liability. It therefore becomes necessary to distinguish between strict indemnity and indemnity against liability . . . It has been generally observed that a contract which simply indemnifies, and nothing more, is against loss or damage only, whereas a contract which binds the indemnitor to pay certain sums of money or perform other acts which will prevent harm or injury to the indemnitee is one of indemnity against liability. Contractors' bonds requiring

payment of claims for labor and material and obligating the contractor to perform as agreed in the contract are quite generally of the latter type. A single contract may, however, indemnify against both actual loss or damage and liability."

These principles are accordant with decisions in this State. And the rule as to accrual of cause of action is stated in *Hilliard v. Newberry*, 153 N.C. 104, 68 S.E. 1056, by *Hoke, J.*, speaking for the Court, in this manner: "On the question presented the authorities are to the effect that when a collateral obligation is in strictness one of indemnity, an action at law will not lie unless and until some actual loss or damage has been suffered; but when the obligation amounts to a binding agreement to do or refrain from doing some definite, specific thing materially affecting the rights of the parties, an action will presently lie for breach of such an agreement and no damage need be shown," citing *Burroughs v. McNeill*, 22 N.C. 297, and quoting from 16 A. & E. 179, Pingrey on Suretyship and Guaranty, Section 182. See also these cases: *Clark v. Bonsal*, 157 N.C. 270, 72 S.E. 954; *Supply Co. v. Lumber Co.*, 160 N.C. 428, 76 S.E. 273; *Lumberton v. Hood, Commr.*, 204 N.C. 171, 167 S.E. 641; *Boney, Ins. Commr., v. Ins. Co.*, 213 N.C. 470, 196 S.E. 837; *Lackey v. R. R.*, 219 N.C. 195, 13 S.E. 2d 234; *Casualty Co. v. Waller, supra*.

Applying these principles to the indemnity contract under consideration, it appears that the language used is sufficient to support an action on indemnity against actual loss or damage, or an action on indemnity against liability, or on both. Hence, the allegations of the complaint are sufficient to withstand the demurrer.

For reasons stated, the judgment from which appeal is taken is hereby

Reversed.