MRS. M. S. MOORE v. GREENVILLE BANKING AND TRUST COMPANY.

(Filed 21 March, 1917.)

**1. Judgments—Pleadings—Evidence.**

When judgment is rendered against a litigant upon the pleadings, the averments in his favor will be taken as true and interpreted in a light most favorable to his claim.

**2. Banks and Banking—Deposits—Set-offs—Equity—Fraud—Insolvency.**

While ordinarily the requirements at common law, or under statutes applicable, forbid a debt due by a partnership to a bank, or by a principal on a note, to be set off by the bank against a deposit of one of the partners, or of a surety, this doctrine is modified in equity when by reason of the insolvency of the parties the question is reduced, as a matter of fact, to one of mutual indebtedness between the bank and its depositor, and it is necessary to allow the set-off to the bank, in whole or in part, to prevent a palpable miscarriage of justice.

**3. Same—Partnership—Husband and Wife.**

Where a husband has deposited his own money in a bank in his wife's name, and accepted by the latter without knowledge of the fact, and he and another, as partners, have become indebted to the bank on a partnership note, signed by each as sureties, and the partnership and the individual members are insolvent, in an action brought against the bank to recover the deposit, it is *Held*, that the defendant may off-set the indebtedness due to it on the note; and were the same not strictly permitted as a set-off, such defense will be considered as a bill in the nature of an equitable *fi. fa.* as property not available to creditors under ordinary legal process.

**4. Banks and Banking—Deposits—Fraudulent Gifts—Husband and Wife—Statutes.**

Where the wife participates in her husband's depositing his money in her name at a bank for the purpose of defrauding his creditors, the attempted appropriation is void by our statute to prevent fraudulent gifts, Revisal, secs. 960-962; and in an appropriate action the deposit will be considered and dealt with as if it stood in the name of the husband.

CIVIL ACTION, heard before *Lyon, J.*, and a jury, at November Term, 1916, of PITT.

Issues were submitted, and the jury having failed to agree upon a verdict, they were discharged from further consideration of the case, and thereupon, on motion, his Honor gave judgment for plaintiff on facts as admitted in the pleadings, and defendant, the bank, excepted and appealed.

*W. F. Evans and F. G. James & Son for plaintiff.*
*Albion Dunn and Skinner & Cooper for defendant.*

MOORE *v.* BANK.

Hoke, J. The action was instituted by plaintiff against the Banking and Trust Company, to recover the balance of a deposit standing in her name on the books of defendant bank. On facts set forth in the answer defendant prayed that it might offset against this claim, or a portion of it, an indebtedness due the bank from plaintiff's husband, W. M. Moore, and the partnership of Hall & Moore, of which he was a member. On motion, said W. M. Moore has been duly made a party and filed an answer in denial of the right claimed by the defendant bank.

On issues submitted the jury failed to agree, and, having been duly discharged, as stated, from further consideration of the case, judgment was entered for plaintiff on the facts admitted in the pleadings.

From these facts, taken from the admissions and averments of defendant bank more directly relevant to the question presented, it appears that in the fall of 1915 the husband made a deposit in the bank in his wife's name to the amount of $6,000, and this deposit was recognized by the bank and plaintiff allowed to check thereon, reducing the same, on 2 February, 1916, to $3,744.38; that during this year, 1915, after 2 February, 1916, the firm of Hall & Moore, composed of W. M. Moore, now a defendant, and W. L. Hall, carrying on a mercantile and insurance business, in the course of said business, had continued dealing with defendant bank, and, to secure any indebtedness which might be due to defendant, executed the demand note of the firm to the bank in the sum of $2,000, said note being also executed by said W. L. Hall and W. M. Moore, the individual members of the firm; that in the fall of 1915, the firm being indebted for as much or more than the amount of said note, demand was made for payment of same and was told by Moore that he would never pay the debt, and "to get it out of him if they could"; that thereupon defendant began an investigation into the affairs of the firm and its members, and ascertained that said firm was insolvent; that Hall was also insolvent, and that defendant W. M. Moore had no property whatever available to creditors except his interest in the deposit in question, now standing in the name of his wife, the *feme* plaintiff. Averment is made, further, that this deposit and claim is in fact and in truth the property of said W. M. Moore, the bank's debtor, and was made by him in his wife's name, without valuable consideration moving from her, with intent to withdraw his property from the reach of his creditors and to avoid payment of his debt due to plaintiffs and others; that the plaintiff was knowingly a participant in the fraudulent act and purpose of her husband, and if defendant is not allowed to appropriate the indebtedness as prayed, he will be without relief in the premises and lose entirely the value of his debt and claim against said W. M. Moore.

These allegations of ownership on the part of the husband and of unlawful and fraudulent act or intent on his part are all fully denied by plaintiff and by her husband, but, assuming the averments of defendant bank to be true, and giving them the interpretation most favorable to its claim, the rule which should prevail when a judgment is entered against a litigant on the pleadings, we are of opinion that the defendant is entitled to have the cause submitted to the jury on appropriate issues.

This right of a bank to appropriate a debt in payment of a deposit is referable to the principle of set-off, dependent, in a court of law, on the construction of the different statutes applicable, but existent, also, as an equitable principle independent of positive statute when necessary to prevent a miscarriage of right. In 3 Ruling Case Law, p. 591, title "Banks," and sec. 219, it is said to obtain "between persons occupying the relation of debtor and creditor and between whom there exist mutual demands, and it is familiar law that mutuality is essential to the validity of a set-off, and, in order that one demand may be set off against another, both must mutually exist between the same parties."

It is held here and in other jurisdictions that this requirement of mutuality ordinarily forbids that the debt of a partnership may be set up against the claim of an individual partner who is a depositor. *Hodgin v. Bank,* 124 N. C., 540; *Adams v. Bank,* 113 N. C., 332. And the same principle usually prevails in a suit by a surety for his individual deposit. The bank may not apply, in satisfaction of such a claim, the amount of a note in which he is only a surety. *Lamb v. Morris,* 118 Ind., 179; Morse on Banking, sec. 326. But these strict applications of the principle of set-off, as it prevails at law, may be and are properly modified when by reason of the insolvency of the parties the question has been reduced as a matter of fact to one of mutual indebtedness between the bank and the claimant and it is necessary to allow an appropriation of the debt to prevent a palpable miscarriage of justice. *Sloan v. McDowell,* 71 N. C., 356; *March v. Thomas,* 63 N. C., 87; *Rolling Mill Co. v. Ore and Steel Co.,* 152 U. S., pp. 596-615; *Barnes v. McMullins,* 78 Mo., pp. 260-271; 2 Story's Eq. Jur., sec. 1437a; 3 Ruling Case Law, pp. 591-592.

In the citation to Story the position is stated as follows: "The authorities upon this question are considerably examined, and the following results arrived at, in a late case. The general rule, in equity as well as at law, is that joint and separate debts cannot be set off against each other. But while at law the rule admits of no exceptions, and the parties to the record only will be regarded, a court of equity will, in a case of insolvency, regard the real parties—those ultimatey to be affected by the decree—and allow a set-off of demands in reality mutual,

although prosecuted in the name of others nominally interested. Courts of equity exercised a jurisdiction over the subject of set-off previous to the enactment of the statutes upon the subject; and their jurisdiction does not in any manner depend upon these statutes."

And in *Rolling Mill v. Ore and Steel Co., supra, Associate Justice Jackson,* delivering the opinion, said: "The adjustment of demands by counterclaim or set-off, rather than by independent suit, is favored and encouraged by the law to avoid circuity of action and injustice (citing *Ry. Co. v. Smith,* 21 Wall., 255). By the decided weight of authority it is settled that the insolvency of the parties against whom the set-off is claimed is a sufficient ground for equitable interference," citing numerous authorities, and further: "In *Schuler v. Israel,* 120 U. S., 506, 510, it was said by *Mr. Justice Miller,* speaking for the Court, that "While it may be true that in a suit brought by Israel against the bank it could in an ordinary action at law only make plea of set-off of so much of Israel's debt to the bank as was then due, it could, by filing a bill in chancery in such case, alleging Israel's insolvency, and that if it was compelled to pay its own debt to Israel the debt which Israel owed it but which was not due would be lost, be relieved by a proper decree in equity; and as a garnishee is only compelled to be responsible for that which, both in law and equity, ought to have gone to pay the principal defendant in the main suit, he can set up all the defenses in this proceeding which he would have in either a court of law or a court of equity."

In the present instance, as we have seen, the claim of the defendant bank is against both the partnership and the individual members who indorsed its note as sureties, and, under the doctrine recognized and approved by these and like authorities on the subject, if the facts should be established as alleged and contended for by defendant bank, the right of appropriation, to the extent required to satisfy the claim, would arise to the bank, and the defendant is therefore entitled, as stated, to have the questions determined on proper issues. And the principle is in no way affected by the fact that the deposit now stands in the name of the plaintiff, the bank having taken it in ignorance of the true conditions affecting its rights. If, as defendant avers, it was in fact and truth the husband's property, and placed in the wife's name with intent to defraud creditors and the husband being insolvent, she was a volunteer, or if she participated in the fraudulent purpose, in such case the attempted appropriation is avoided by our statute to prevent fraudulent gifts and conveyances, Revisal, secs. 960-962, and the question can, for the purposes of this defense, be considered and dealt with

as if the deposit stood in the name of the husband, a course pursued with approval in *Citizens Bank v. Garnett,* 21 Kan., 354, an apt authority for the disposition we make of the present appeal.

Even if the doctrine of equitable set-off did not, in strictness, apply on the facts alleged in the answer, the defendant would be entitled to have its defense considered as a bill in the nature of an equitable *fi. fa.,* the property in question not being available to creditors under ordinary legal process. *Mebane v. Layton,* 86 N. C., 572; *Bank v. Harris,* 84 N. C., 206; *Tabb v. Williams,* 57 N. C., 352; *Harrison v. Battle,* 16 N. C., 541. We have disposed of the present appeal on the issuable facts alleged by the defendant, that this deposit was the property of the husband placed in the name of the wife with intent to defraud the husband's creditors, and have purposely refrained from discussing the evidential facts also appearing in the pleadings, that the deposit in question was part of the proceeds from the sale of a piece of property held by the husband and the wife as an estate by entireties. What may have been the nature of the original investment in this property, and what the effect of the subsequent sale and any agreement that may have been made by the parties concerning it or the proceeds from it can best be determined when the evidence has been more fully disclosed on the trial of the issue.

There is error, and this will be certified that the cause may be submitted to the jury.

Reversed.